**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcos Garcia, | No. CV-22-01648-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Marcos Garcia's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Docs. 12, 14, 15), and the Court now rules.

**I.   BACKGROUND**

The issue presented in this appeal is whether substantial evidence supported the determination that Plaintiff was not disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. (Doc. 12 at 1, 8). More specifically, Plaintiff alleges that "[t]he ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of consultative examiner [J.] Peachey, M.D." (Doc. 12 at 1).

**A.   Factual Overview**

Plaintiff was fifty-one years old on his alleged disability onset date of February 28, 2018. (*Id.* at 1, 3). He had completed education up to the tenth grade and reported past work

as a carpentry foreman. (*Id.* at 3). On July 29, 2019, Plaintiff filed applications for social security disability benefits and supplemental security income benefits. (*Id.* at 1). Plaintiff alleged he suffered from neuropathy bilaterally in his feet and hands; chronic arthritis in his back and joints; a herniated disc; two bulging discs; numbness in his back and legs; a right knee issue; issues with his right elbow; and diabetes. (*Id.* at 3). Plaintiff's claims were denied initially on December 30, 2019, and upon reconsideration on May 5, 2020. (*Id.* at 2). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was held via telephone on July 19, 2021. (Doc. 11-3 at 19). The ALJ issued an unfavorable decision on August 4, 2021. (Doc. 12 at 2). In his decision, the ALJ found that based on Plaintiff's July 29, 2019, social security applications, Plaintiff has not been disabled—as defined in the Social Security Act—from February 28, 2018, through the date of the decision. (*Id.* at 2). The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted that decision as the SSA's final decision. (*Id.*) Plaintiff then sought review in this Court. (Doc. 1).

### B.     The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful,"

e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability to do physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work

experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since February 28, 2018, the alleged onset date." (Doc. 11-3 at 22).

At step two, the ALJ determined that the following impairment was "severe": degenerative disc disease. (*Id.*) The ALJ found that Plaintiff's degenerative disc disease "significantly limit[ed] the ability to perform basic work activities." (*Id.*) The ALJ analyzed Plaintiff's claimed mental impairment under the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders. (*Id.*) He found that Plaintiff's "medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the [Plaintiff]'s ability to do basic work activities, it is nonsevere." (*Id.* at 23 (emphasis in original)).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Plaintiff has the RFC to perform the full range of medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c). Although the reviewing medical consultants from the State agency opined that Plaintiff could only "perform light work with occasional kneeling, crouching, crawling, climbing ladders, ropes, or scaffolds and frequent balancing, stooping, and climbing ramps/stairs," the ALJ found that Plaintiff could perform medium work "due to his minimal treatment and gaps in treatment." (*Id.* at 28). The ALJ supported this finding by referencing Plaintiff's physical exams that showed Plaintiff had mostly normal gait, strength, and range of motion with negative straight leg raises. (*Id.*) Additionally, Plaintiff reported signs of improvement with treatment, and he used public transportation, tended to his own activities of daily living, and rode a bicycle to get around. (*Id.*)

At step four, the ALJ determined that Plaintiff could not perform any past relevant

work as a concrete mason or concrete pouring supervisor, both of which Plaintiff performed at a heavy level of exertion.

At step five, the ALJ considered Plaintiff's age, education level, work experience, and RFC and determined that there are jobs that exist in significant enough numbers in the national economy that Plaintiff could perform. (*Id.* at 29–30). Consequently, the ALJ found that Plaintiff is not disabled under the Social Security Act. (*Id.* at 30).

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.   DISCUSSION

Plaintiff raises one claim of error in the ALJ's analysis: "[t]he ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the

opinion of consultative examiner [J.] Peachey, M.D." (Doc. 12 at 1). Plaintiff takes issue with the way in which the ALJ conducted his evaluation of Dr. Peachey's opinion evidence, and thus Plaintiff asserts that the overall RFC determination is unsupported by substantial evidence. The Court disagrees.

Plaintiff is correct that as of March 27, 2017, the SSA modified the rules for evaluating opinion evidence. *See* 20 C.F.R. §§ 404.1520c, 416.920c. According to the new regulations, the ALJ should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ considers the following factors when considering a particular medical opinion in a case: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important of these factors are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). The ALJ should "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in [a] determination or decision." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ will "articulate how [he or she] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

### A.  Dr. Peachey's Opinion

Dr. Peachey, a consultative medical examiner, examined Plaintiff on December 2, 2019, and created a tele-dictated report from his examination. (Doc. 11-10 at 29–34). Regarding Plaintiff's medical history, Dr. Peachey stated that Plaintiff:

> has back pain that radiates down to both legs, numbness on the upper back on the right that comes and goes. The pain is constant, it varies in strength depending upon his activities and rest by lying down helps to control the discomfort. He also states he has neuropathies in his leg, feet and hands, may be that is where they [sic] get the diabetes. He has arthritis in his back and joints. He has lumbar herniated disk, 2 bulging disks, and right knee pain and right elbow. He had lumbar spine surgery in 1991 and gradually pain has recurred.

(*Id.* at 29). Dr. Peachey did not have any medical records to rely upon. (*Id.* at 31). In further conversation with Plaintiff, Dr. Peachey reported that Plaintiff had "some decreased motion" and that "[h]e can walk approximately a fourth of a block and then he needs to rest" and could walk again after resting five minutes. (*Id.* at 30). Additionally, Plaintiff could "sit for 20 minutes and then his back pain causes him to have to move. He can stand for 20 minutes and again back pain makes it uncomfortable. He lifts under 10 pounds. He does not drive, he does his own [activities of daily living]." (*Id.*)

Upon examining Plaintiff, Dr. Peachey reported that Plaintiff "walks with a limp on the right. He cannot tandem walk. He cannot toe walk, heel walk, no hopping. He can squat." (*Id.*) Additionally, Dr. Peachey conducted a range of motion examination where he found that Plaintiff had lower ranges of motion than normal in multiple areas including the cervical spine, lumbar spine, left shoulder, left elbow, right elbow, left wrist, and right wrist. (*Id.* at 30–31). He also found that Plaintiff had normal sensation and muscle strength in his arms, hands, and legs. (*Id.* at 31).

Based on his examination, Dr. Peachey opined that Plaintiff's conditions would impose limitations for continuous period of twelve months or more. (*Id.* at 32). He imposed carrying restrictions of less than ten pounds, walking restrictions of two to four hours per day, and sitting restrictions of less than six hours per day. (*Id.* at 32–33). He also stated that Plaintiff could only occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl,

and Plaintiff could never climb ladders, ropes, or scaffolds, reach, handle, finger, or feel. (*Id.* at 33).

### B. The ALJ's Evaluation of Dr. Peachey's Opinion

The ALJ concluded that Dr. Peachey's opinion was "unpersuasive." (Doc. 11-3 at 28). The ALJ's complete rational was as follows:

> On December 2, 2019, John Peachey, M.D., a consultative physician, examined the claimant at the request of the State agency. He opined the claimant was limited to sedentary work due to decreased range of motion and pain in the shoulders bilaterally. During an eight-hour workday, the claimant was limited to 3 hours standing/walking and 4 hours sitting secondary to gait limping and restrictions on types of walking and chronic low back pain. (Exhibit 5F). He can occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs but never climb ladders, ropes, or scaffolds due to decreased range of motion in the shoulders and low back pain and lumbosacral degenerative disc disease. Dr. Peachey noted the claimant must avoid working around heights and moving machinery. (Exhibit 5F).
>
> The undersigned finds Dr. Peachey's opinion unpersuasive. His extreme limitations are not supported by the overall objective medical evidence showing mostly normal gait and strength with negative straight leg raise tests. (Exhibit 1F; Exhibit 2F; Exhibit 3F/pp. 1-4). Dr. Peachey seemed to rely heavily on the claimant's subjective reports and only examined the claimant on a one-time basis. Furthermore, the claimant's gaps in treatment and lack of aggressive [sic] tend to suggest his pain is not disabling as alleged. In addition, the claimant reported activities showing he is higher functioning than alleged including using public transportation, tending to his own activities of daily living, and riding a bicycle to get around. (Exhibit 3F/pp. 1-4; Exhibit 5F; Testimony). An x-ray of the claimant's lumbar spine dated December 2, 2019 revealed diffuse degenerative disc disease at L4-L5 with associated changes of muscle spasm otherwise negative study. (Exhibit 4F). Thus, the claimant has no neural compromise.

(*Id.*)

### C. The Parties' Arguments

Plaintiff primarily argues that the ALJ did not conduct a proper supportability analysis when considering the opinion of Dr. Peachey. (*See* Doc. 12 at 10). He believes the ALJ "solely rel[ied] on Plaintiff's self-reports" when discounting Dr. Peachey's opinion and ignored the multiple probative findings from Dr. Peachey's physical examination. (*Id.*

at 11). Plaintiff bases his argument on the ALJ's failure to mention Dr. Peachey's positive objective medical findings from his examination of Plaintiff. (*Id.* at 11–12). Plaintiff also argues, to a lesser degree, that Dr. Peachey's opinion was consistent with the rest of the record.

Defendant defends the sufficiency of the ALJ's rationale for discrediting the opinion of Dr. Peachey. (Doc. 14 at 6–10). According to Defendant, the ALJ permissibly found that Dr. Peachey's opinion could be discredited under both the "consistency" and "supportability" factors. (*Id.*) Defendant responds to Plaintiff's claim that the ALJ discredited Dr. Peachey's opinion purely because it was based on subjective reports by stating that the ALJ was pointing out that Dr. Peachey only saw Plaintiff a single time and thus many of Dr. Peachey's observations were based on Plaintiff's self-reports about Plaintiff's medical history. (*Id.* at 6). Defendant goes on to state that "what little objective evidence was procured in preparation of Dr. Peachey's assessment did not support his own findings." (*Id.*) Defendant references the ALJ's discussion of the x-ray of Plaintiff's lumbar spine on the same day as Dr. Peachey's examination and Dr. Peachey's observations of normal strength and good sensation as objective evidence supporting the ALJ's conclusion. (*Id.* at 6–7).

### D. Analysis

The ALJ properly conducted the supportability and consistency analysis in finding Dr. Peachey's opinion unpersuasive.

As for supportability, the ALJ opined that Dr. Peachey "seemed to rely heavily on the claimant's subjective reports." (Doc. 11-3 at 28). However, Plaintiff is incorrect in his claim that the ALJ discounted Dr. Peachey's opinion solely because his opinion was based on subjective reports. The ALJ pointed to objective evidence at odds with Dr. Peachey's overall conclusion. This evidence included: Dr. Peachey's own observation that Plaintiff had normal strength and sensation; and the x-ray of Plaintiff's lumbar spine taken on the same day as Dr. Peachey's examination that showed diffuse degenerative disc disease but an otherwise negative study and no neural compromise. (*Id.*) Although the ALJ did not

include in his discussion weighing this objective evidence against the other evidence from Dr. Peachey's examination, it is nonetheless up to the ALJ to weigh evidence and make credibility and ambiguity determinations. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). The ALJ was presented with conflicting objective and subjective reports that formed the basis for Dr. Peachey's opinion. The ALJ made the determination that when Dr. Peachey ignored objective medical testing and some of Plaintiff's own reports, it made Dr. Peachey's overall conclusions about Plaintiff's disability unpersuasive. Under substantial evidence review, it is not the role of this Court to remand based on Plaintiff's alternative interpretation of the evidence. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)).

Regarding consistency, the ALJ properly found that Dr. Peachey's opinion was inconsistent with the rest of the medical and nonmedical record. The ALJ stated that Dr. Peachey's "extreme limitations are not supported by the overall objective medical evidence showing mostly normal gait and strength with negative straight leg raise tests." (Doc. 11-3 at 28). The ALJ also pointed out that Plaintiff had large gaps in his treatment history and lacked aggressive attempts to deal with the alleged pain, demonstrating that his pain was not as disabling as alleged. (*Id.*) Moreover, Plaintiff tended to his activities of daily living and rode a bicycle and public transportation to get around. (*Id.*) This reasoning is substantial evidence to support the ALJ's conclusion that Dr. Peachey's opinion was not consistent with the rest of the medical and nonmedical record.

Plaintiff argues that "his lack of treatment was due to him being homeless since losing his job" and the ALJ needed to "offer evidence that Plaintiff's allegations of homeless [sic] were not a factor in a lack of treatment." The ALJ expressed a recognition "that the claimant's financial situation is not optimal[,] and it is unfortunate he has not been able to afford healthcare." (*Id.* at 27). However, he also found that Plaintiff had not

"exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies." (*Id.* at 27).

In sum, particularly when examining the consistency and supportability findings in totality, substantial evidence supports the ALJ's findings. They are free from legal error because the ALJ sufficiently explains how Dr. Peachey's opinion lacks support from and is inconsistent with the medical evidence on record and Dr. Peachey's own observations, in accordance with SSA regulations. Thus, the Court affirms the ALJ's decision.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 28th day of November, 2023.

James A. Teilborg
Senior United States District Judge